```
                    19MAG 7640
Approved:    _____                         ORIGINAL
             Peter J. Davis
             Assistant United States Attorney

Before:      THE HONORABLE HENRY B. PITMAN
             United States Magistrate Judge
             Southern District of New York
```

- - - - - - - - - - - - - - - - - - - - X
                                         :   SEALED COMPLAINT
UNITED STATES OF AMERICA                 :
                                         :   Violations of
           - v. -                        :   18 U.S.C. §§ 1349,
                                         :   1343, and 2
CAMBRIA MERRILL,                         :
     a/k/a "Margaret Koulibaly"          :   COUNTY OF OFFENSE:
                                         :
                       Defendant.        :   NEW YORK
- - - - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

   RYAN QUIGLEY, being duly sworn, deposes and says that he is a Special Agent with the U.S. Secret Service, and charges as follows:

COUNT ONE
(Conspiracy to Commit Wire Fraud)

   1. From at least in or about March 2019 up to and including at least in or about June 2019, in the Southern District of New York and elsewhere, CAMBRIA MERRILL, a/k/a "Margaret Koulibaly," the defendant, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit wire fraud in violation of Title 18, United States Code, Section 1343.

   2. It was a part and an object of the conspiracy that CAMBRIA MERRILL, a/k/a "Margaret Koulibaly," the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code,

Section 1343.

(Title 18, United States Code, Section 1349.)

COUNT TWO
(Wire Fraud)

3. From at least in or about March 2019 up to and including at least in or about June 2019, in the Southern District of New York and elsewhere, CAMBRIA MERRILL, a/k/a "Margaret Koulibaly," the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, MERRILL participated in a scheme to defraud victims into wiring money under false pretenses by opening and controlling bank accounts using false identification documents and receiving wire transfers from victims of a fraud scheme into those bank accounts, with the intent to withdraw and transfer said funds, and aided and abetted the same.

(Title 18, United States Code, Sections 1343 and 2.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

4. I am a Special Agent with the U.S. Secret Service in New York. I have been personally involved in the investigation of this matter, and I base this affidavit on that experience, and on my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### The Business Email Compromise Fraud

5. In or about May 2019, law enforcement participated in interviews of an individual ("Victim-1"), who was a potential investor in a medical device company ("Company-1"). Based on those interviews, I have learned the following:

a. According to Victim-1, in or around May 2019, Victim-1 participated in discussions with a Company-1 executive regarding an investment opportunity with Company-1. Victim-1 communicated with a Company-1 representative about the investment by email, among other forms of communication. One of Victim-1's points of contact at Company-1 was Company-1's Chief Financial Officer (the "CFO"). Victim-1 communicated with the CFO at the email address "[CFO-Name]@[Company-1-Name].com."

b. According to Victim-1, and based on emails provided by Victim-1, on or about May 9, 2019, an individual purporting to be the CFO of Company-1 sent an email to Victim-1 and other potential investors in Company-1. The individual sent the email from an email address that was identical in all respects to the CFO's actual email address except that the email address incorrectly spelled Company-1's name by one letter. This spoofed email address is referred to herein as "Email Account-1." The email also purported to copy the Chief Executive Officer (the "CEO") of Company-1 in the email, but the CEO's email address again incorrectly spells Company-1's name in the domain name. In the email, the user of Email Account-1 stated, in summary, that the final transaction paperwork had been completed and requested that the investors sign the paperwork and wire approximately $695,833.25 to a bank account at a national bank ("Bank-1").

6. According to documents provided by Victim-1, I have learned that:

a. On or about May 9, 2019, Victim-1's assistant sent an email to Email Account-1 inquiring about the bank information and whether the funds for the investment should be wired to Bank-1.

b. On or about May 9, 2019, an individual purporting to be the CFO sent another email from Email Account-1 to Victim-1's assistant explaining that the wire should go to Bank-1. The user of Email Account-1 also provided details of an account ending in 7657 at Bank-1 that purported to be in the name of Company-1 (the "7657 Account").[1]

c. On or about May 13, 2019, Victim-1's assistant sent an email to Email Account-1 stating that the wire ("Wire-1") had been sent to Bank-1. Wire-1 was approximately $695,833.25.

---

[1] Based on an interview of Victim-1, I have learned that Victim-1's assistant was located in the Southern District of New York when she received the email instructing her to wire funds to the 7657 Account at Bank-1.

3

7. According to representatives from Victim-1's bank ("Bank-2"), Victim-1 wired $695,833.25, e.g., Wire-1, to the account ending in 7657 at Bank-1 on or about May 13, 2019.[2]

8. Based on law enforcement interviews of the CFO, I have learned the following, in sum and substance:

a. The CFO was working with Victim-1 and other investors regarding a possible investment into Company-1 and had previously sent the investors transaction documents by email. The CFO did not send the communications from Email Account-1, and Company-1 does not have a bank account at Bank-1.

b. Following Victim-1's wiring of $695,833.25 to the Bank-1 account ending in 7657, Company-1 hired an outside information technology company to conduct an investigation of Company-1's cybersecurity. According to the CFO, the information technology company discovered that a malicious forwarding rule was being applied to a Company-1 executive's email account. According to the CFO, the information technology company discovered that this malicious software automatically forwarded the Company-1 executive's emails to another account. According to the CFO, the information technology company believed that this malicious software was how the perpetrators were able to obtain information about and contact Victim-1.

### Merrill Opens the 7657 Account

9. Based on my review of Bank-1's records, I have learned the following:

a. On or about April 27, 2019, an individual entered a Bank-1 branch in Evanston, Illinois and applied to open the account ending in 7657. Surveillance video of the Bank-1 branch captured the individual who opened that account. Based on a comparison of surveillance video to a photograph obtained from an Illinois driver's license, law enforcement has identified the individual who opened that account as CAMBRIA MERRILL, a/k/a "Margaret Koulibaly," the defendant.

---

[2] I have also learned that Victim-1's assistant initiated Wire-1 by emailing a Bank-2 branch located in Delaware.

4


*Above: photo from Bank 1 of Cambria Merrill, a/k/a "Margaret Koulibaly" opening account ending in 7657*


*Above: photo from an Illinois driver's license of CAMBRIA MERRILL*

      b. CAMBRIA MERRILL, a/k/a "Margaret Koulibaly," the defendant, opened the business account ending in 7657 in the name of "Kagaret Services LLC" and listed a phone number ending in 6731 (the "Subject Phone") as the contact number for account holder Kagaret Services LLC. MERRILL listed an individual named "Margaret Koulibaly" as the owner of Kagaret Services LLC. MERRILL listed a specific address in Chicago (the "Subject Address") as the residence address for Margaret Koulibaly. MERRILL's bank

5

application also provided a date of birth for Margaret Koulibaly (the "Koulibaly DOB"), and a passport number for Koulibaly (the "Koulibaly Passport Number").

10. Based on communications with law enforcement officers who conducted searches of law enforcement databases that keep records of travel, social security numbers, and passport numbers, among other things, I have learned the following:

a. There are no prior travel records or travel documents for the individual named Margaret Koulibaly with the Koulibaly DOB.

b. The Koulibaly Passport Number that was used to set up the account ending in 7657 is associated with a Gambian passport that is in the name of another individual that is not Margaret Koulibaly.

### The Search of the Subject Storage Unit

11. Based on my discussions with law enforcement officers who communicated with Bank-2 representatives, Bank-2 records, and my communications with Bank-2 representatives, I have learned the following:

a. On or about June 19, 2019, CAMBRIA MERRILL, a/k/a "Margaret Koulibaly," the defendant, negotiated four cashier's checks at a Bank-2 branch in Chicago, Illinois.

b. Two of the cashier's checks listed "Margaret Koulibaly" as the payee.

c. The account on which the cashier's checks were drawn is in the name of Biratouray Services, LLC. That account lists the Subject Phone as the contact phone number and the Subject Address as the account address.

d. On or about June 19, 2019, MERRILL cashed two of the cashier's checks at a Bank-2 branch.

12. Based on my discussions with law enforcement officers who conducted surveillance of MERRILL, a/k/a "Margaret Koulibaly," the defendant, I have learned the following:

a. On or about June 20, 2019, MERRILL went to a "Life Storage" storage facility located on West Pershing in Chicago Illinois.

13. Based on my discussions with law enforcement officers and my review of phone service provider records, I have learned the following:

      a. On or about May 24, 2019, the Subject Phone called a number associated with Life Storage two times.

14. Based on my discussions with law enforcement officers who had discussions with the Chicago Area Manager of Life Storage, I have learned the following:

      a. An individual named "Margaret Koulibaly" rents a Life Storage unit in the Life Storage facility located on West Pershing, Chicago, Illinois (the "Subject Storage Unit").

      b. The account for the Subject Storage Unit lists the Subject Phone as the contact phone number.

      c. The account for the Subject Storage Unit lists the Subject Address as the account address.

15. On or about June 20, 2019 and the morning of June 21, 2019, law enforcement executed a search warrant of the Subject Storage Unit, which was authorized by a United States Magistrate Judge for the Northern District of Illinois. Based on that search law enforcement recovered the following items, among others:

      a. Approximately $30,000 in cash;

      b. A Bank-2 business debit card in the name of Margaret Koulibaly and Kagaret Services LLC;

      c. A Bank-2 debit card in the name of Margaret Koulibaly;

      d. A national bank ("Bank-3") business debit card in the name of Margaret Koulibaly and Kagaret Services LLC;

      e. A Bank-3 debit card in the name of Margaret Koulibaly;

      f. A checkbook for a Bank-3 account in the name of Kagaret Services LLC that lists the Subject Address as the address;

      g. A Bank-2 checkbook for the account in the name of Margaret Koulibaly that lists the Subject Address as the address.

      h. A purported passport in the name of "Carolina Diallo," which contains the picture of CAMBRIA MERRILL, a/k/a

"Margaret Koulibaly," the defendant, a screenshot of which is pictured here;



i. A purported visa, which contains the picture of picture of CAMBRIA MERRILL, a/k/a "Margaret Koulibaly," the defendant, a screenshot of which is pictured here;



16. Based on my discussions with law enforcement officers with access to travel document records, I have learned that the travel documents found in the Subject Storage Unit identified above appear to be invalid.

## The 9446 Account

17. Based on my review of bank records from Bank-3, I have learned the following:

8

a. On or about March 16, 2019, a business bank account ending in "9446" was opened at Bank-3 in the name of Kagaret Services LLC (the "9446 Account"). The Bank account listed the Subject Address as the business address. The authorized signer for the account was "Margaret Koulibaly." As with the 7657 Account above, the bank application provided that Margaret Koulibaly's date of birth was the Koulibaly DOB, and that Margaret Koulibaly's passport number was the Koulibaly Passport Number.

b. On or about April 26, 2019, approximately $5,806 was wired into the 9446 Account.

c. On or about May 22, 2019, approximately $18,301.73 was wired into the 9446 Account.

d. On or about June 5, 2019, approximately $14,411.00 was wired into the 9446 Account.

e. On or about May 1, 2019, approximately $5,300 was withdrawn from the 9446 Account. The customer making the withdrawals was listed as "M. Koulibaly" and listed the passport number as the Koulibaly Passport Number.

f. On or about May 28, 2019, approximately $9,852, and $7,685, were withdrawn from the 9446 Account in two separate withdrawals from two separate Bank-3 locations. The customer making the withdrawals was listed as "M. Koulibaly" and / or listed the Koulibaly Passport Number. Based on my review of surveillance video from the two Bank-3 locations, it appears that CAMBRIA MERRILL, a/k/a "Margaret Koulibaly," the defendant, made these withdrawals..

g. On or about June 7, 2019, approximately $9,800 was withdrawn from the 9446 Account. The customer making the withdrawals was listed as "M. Koulibaly" and listed the Koulibaly Passport Number.

h. On or about June 10, 2019, approximately $4,400 was withdrawn from the 9446 Account. The customer making the withdrawal was listed as "M. Koulibaly" and listed the Koulibaly Passport Number.

## The 3393 Account

18. Based on my review of records from another national bank ("Bank-4"), I have learned the following.

a. On or about April 20, 2019, a business bank account at Bank-4 ending in 3393 (the "3393 Account"). The Account was opened in the name of Kagaret Services LLC and listed "Margaret Koulibaly" as the "Manager."

b. On or about May 30, 2019, the 3393 Account received a wire transfer for approximately $78,338.56 from an industrial equipment company ("Victim-2").

c. On or about June 11, 2019, the 3393 Account received a wire transfer for approximately $75,361.72 from Victim-2.

d. On or about June 14, 2019, the 3993 Account received a wire transfer for approximately $17,31.45 from Victim-2.

19. Based on my discussions with law enforcement officers that conducted interviews with a representative from Victim-2, I have learned the following:

a. Victim-2 has a branch location located in the Bronx, New York.

b. Victim-2 regularly purchases products from a industrial equipment provider ("Company-2").

c. Victim-2 has received email correspondence from an email account purporting to represent Company-2. According to the representative from Victim-2, the email account that contacted Victim-2 differed from the true email address for Company-2 by one letter.

d. According to a representative from Victim-2, the spoofed Company-2 account stated to Victim-2 that Company-2 had changed its banking information and that funds should be wired to the 3393 Account, among other accounts.

20. From my review of publicly available materials, as well as my training and experience as a United States Secret Service Special Agent, I know that, at all relevant times, the deposits of the banks discussed in this Complaint were insured by the Federal Deposit Insurance Corporation.

WHEREFORE, the deponent respectfully requests that a warrant be issued for the arrest of CAMBRIA MERRILL, a/k/a "Margaret Koulibaly," the defendant, and that she be arrested and imprisoned or bailed, as the case may be.

_____
Ryan Quigley
Special Agent
U.S. Secret Service


Sworn to before me this
15th day of August, 2019

_____
THE HONORABLE HENRY B. PITMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK