

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 5, 2021

**BY ECF**

The Honorable Raymond J. Dearie
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    *United States v. Cambria Merrill*, 19 Cr. 695 (RD)

Dear Judge Dearie:

    The Government respectfully submits this letter in advance of Cambria Merrill's sentencing, which is scheduled for August 12, 2021 at 11:00 a.m. As set forth in further detail below, a sentence within the stipulated Guidelines range of 37 to 46 months' imprisonment (the "Stipulated Guidelines Range") – such as the 37 months recommended by Probation –is sufficient but not greater than necessary in light of the defendant's participation in an extensive business email compromise scheme.

**A.  Factual Background**

    As set forth in the PSR, the defendant played a pivotal role in a sophisticated wire fraud scheme that duped a number of victims into wiring money under fraudulent pretenses. As detailed below, the conspiracy was far-reaching and effective.

    *The Company-1 Fraud*.  In or about May 2019, Company-1, a medical-device company, was seeking investors. On or about May 9, 2019, an individual ("CC-1") assumed the identity of Company-1's Chief Financial Officer (the "Company-1 CFO") and instructed potential investors to wire their funds to an account at Wells Fargo (the "Kagaret Wells Fargo Account"). CC-1 emailed investors from an email account that was identical to the Company-1 CFO's email account except that it misspelled the domain name by one letter. One of those investors was Victim-1. CC-1 then repeatedly emailed Victim-1's assistant who was in New York and provided her the wiring instructions to send the money to the Kagaret Wells Fargo Account. Ultimately, Victim-1 wired approximately $695,833.25 to the Kagaret Wells Fargo Account ("Wire-1") and another investor, Victim-2, wired approximately $2,609,375.25 to the Kagaret Wells Fargo Account. Eventually, the fraudulently wired money was returned and neither investor suffered any loss.[1]

---

[1] The PSR discusses Victim-2 in paragraphs 19-21. To be clear, Victim-2 wired this amount as a part of the same fraudulent scheme involving its desire to invest in Company-1. Both wires were reversed, so the victims suffered no actual loss.

*The Kagaret Wells Fargo Account*. As set forth in the PSR, the defendant opened the Kagaret Wells Fargo Account using a fraudulent identification in the name "Margaret Koulibaly." Surveillance video of the Wells Fargo branch in Illinois captured the defendant opening the account and purporting to be "Margaret Koulibaly." The account was in the name of "Kagaret Services LLC" and listed a phone number ending in 6731 (the "Koulibaly Phone") as the contact number for account holder Kagaret Services LLC. The defendant also listed a specific address in Chicago (the "Kagaret Address") as the residence address for Margaret Koulibaly.

*The Koulibaly Storage Unit*. As set forth in the PSR, law enforcement executed a judicially obtained search warrant of a storage unit that was rented in the name of Margaret Koulibaly and lists the Koulibaly Phone as the contact number. Law enforcement recovered, among other things, $30,000 in cash, multiple bank cards in various company names, a purported passport in the name of "Carolina Diallo," which displayed a picture of the defendant, and a purported Visa in the name of "Sandra Thomas," which displayed a picture of the defendant.

*The Koulibaly Phone*. Pursuant to a judicially authorized search warrant, law enforcement executed a search warrant on the Koulibaly Phone. On that phone, there were WhatsApp communications between a "Margaret K" and an individual named "Oga." "Margaret K" repeatedly communicates about opening bank accounts using false identifications and the transfer and wiring of proceeds. For example, in substance and in part:

- On or about April 25, 2019, "Margaret K" texts, "The info for Margaret looks suspicious . . . Y'all need to have shit together instead of me lookin stupid they put the wrong zip code and the number looks suspicious. And I don't even know where the number is from so they were asking me and I don't even know . . . You know she was about to give me the money until she realized the zip code was wrong." Margaret K messages, "Hey its 380 in Margaret TCF business. You want me to remove the entire 380?"

- On or about May 2, 2019, "Oga" texts Margaret K, "People make mistakes and learn from them. Now you know what information to request next time. You still have 3 more ID. This is how you learn."

- On or about May 29, 2019, Oga texts Margaret K, "We have been compromised . . . ," and Margaret K responds, in part, "OMG what . . . I need to go to storage."

- On or about June 3, 2019, Margaret K texts, "Do you u realize u just sent me the branch we go to with our real ID?"

- On June 4, 2019, Margaret K texts, "They said the I'd [sic] is fake," Oga responds, "Fuck….Tell them to give you your ID and leave."

- On or about June 17, 2019, Margaret K texts, "She said the Wells Fargo wire on April 22nd is the reason for the account closure."

On February 19, 2021, the defendant waived indictment and pleaded guilty to conspiring to commit wire fraud in violation of Title 18, United States Code, Section 371. Under the terms

of the plea agreement, the parties agreed that the defendant's Guidelines range was 37-46 months' imprisonment (the "Stipulated Guidelines Range"). The defendant also agreed to forfeit $3,550,045.23 as part of the plea agreement.

**B. Discussion**

    **1. Applicable Law**

The Government submits that a sentence within the Stipulated Guidelines Range is appropriate for this defendant. As the Court is aware, the Sentencing Guidelines provide strong guidance to sentencing courts following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49. After that calculation, however, the Court must consider the seven factors outlined in Title 18, United States Code, Section 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, and the need to adequately deter criminal conduct and promote respect for the law. *Id.* at 50 & n.6.

    **2. A Sentence Within the Stipulated Guidelines Range Is Appropriate**

When determining the appropriate sentence, this Court should consider the nature and seriousness of the offense, the need to deter to this defendant and others, and the need to promote respect for the law. 18 U.S.C. § 3553(a). These considerations weigh in favor of a sentence within the Stipulated Guidelines Range, as the Probation Department recommends.

As an initial matter, this offense is serious. Merrill and her co-conspirators orchestrated a complex and effective fraud that used fake email accounts, fake identification documents, burner cellphones, and fake bank accounts, to fraudulently induce unsuspecting victims to wire large quantities of money into their possession. Luckily, law enforcement was able to recover the funds before it was too late, but, as stated in the PSR, the defendant helped fraudulently procure millions of dollars in furtherance of this scheme.

Merrill did not have a minor role in this fraud. Of course, the Government does not suggest that Merrill was the mastermind of the conspiracy. However, Merrill's text messages with her husband and co-conspirator suggest she knew full well that what she was doing was illegal; that she was going to make multiple attempts to present fraudulent documents, if necessary; and that she knew and controlled the storage unit, which held approximately $30,000; fraudulent documents; and bank cards.

The Government acknowledges that Merrill's lack of criminal history and work history are mitigating factors that the Court should consider when determining the appropriate sentence. (Indeed, the defendant's lack of criminal history is reflected in her criminal history category and incorporated into the Stipulated Guidelines Range.) But a time served sentence would not adequately reflect the defendant's culpability nor would it provide much needed general deterrence. Business email compromise schemes depend on participants like the defendant, who go into banks and fraudulently open and manipulate bank accounts. A sentence within the

Stipulated Guidelines Range is necessary to deter anyone who would assume that taking on such a role is an easy way to make money or does not have any real impact on victims.

## C. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the Stipulated Guidelines Range, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

                                                Respectfully submitted,

                                                AUDREY STRAUSS
                                                United States Attorney

                                 By: _____
                                                Peter J. Davis
                                                Assistant United States Attorney
                                                (212) 637-2468

cc:    counsel (via ECF)